## WESTINGHOUSE AIR BRAKE CO. v. CHRISTENSEN ENGINEERING CO.

(Circuit Court, S. D. New York. March 10, 1903.)

1. PATENTS—VALIDITY AND INFRINGEMENT—VALVE FOR AIR BRAKES.

　　The Boyden patent, No. 481,134, for a valve for automatic air brakes, which admits both train pipe air and auxiliary reservoir air to the brake cylinder in applying for emergency stops, and which is provided with means for restricting the flow of auxiliary reservoir air to the brake cylinder as compared with the flow of the train pipe air thereto, discloses patentable novelty, and is valid. Claims Nos. 2, 4, and 11 also *held* infringed.

In Equity. Suit for infringement of letters patent No. 481,134 for a valve for automatic air brakes, issued to George Albert Boyden, August 16, 1892. On final hearing.

J. Snowden Bell and Frederic H. Betts, for plaintiff.
William A. Jenner and Edmund Wetmore, for defendant.

WHEELER, District Judge. This suit is brought upon patent No. 481,134, dated August 16, 1892, and granted to George Albert Boyden, assignor to the I oyden Brake Co., for a valve for air brakes.

In applying and releasing air brakes as now here understood the engineer can only force a r into the train pipe to charge the apparatus and maintain pressure, and release air from the train pipe to remove pressure on that side of a valve, and let it move back and open passages for sending the air under pressure from auxiliary reservoirs to the brake cylinders to apply the brakes. The relief of train pipe pressure at the engine had to reach each car successively, and let air from the auxiliary reservoirs to the brake cylinders, and apply the brakes on each car one after another, till the last car should be reached and its brakes be applied, unless it could be sooner disposed of at each car for releasing it from the next. It would not go to the brake cylinders against the higher necessary pressure of the reservoir air. These successive applications of the brakes of cars were, and are, sufficient for the usual gradual slowing up of trains, and highly useful;

but in sudden stops, when the forward cars were successfully acted upon, they would be bumped by those following, to the danger of the train, and delay in bringing the whole to a standstill. These appliances had been covered by patents to Boyden, and to George Westinghouse, Jr. Boyden appears to have conceived the idea of restricting the flow of auxiliary air enough to let train pipe air go to the brake cylinder on each car, and immediately release such air there for the next car, and quickly apply the brakes on each car, and stop the whole train by stopping each car. In his specification the inventor says:

"This invention relates to improvements in valve mechanism of automatic air brake systems, and has for its principal object to provide for the admission of air pressure to the brake cylinder from both the train pipe and the auxiliary reservoir, so as to affect a powerful application of the brakes, and at the same time produce a reduction of air pressure in the train pipe adjacent to the valve mechanism to quicken the application of succeeding brake mechanisms, so that the brakes on all the cars of the train will be applied at nearly the same instant."

He then describes particularly the parts of the mechanism in question with lettered parts corresponding with the drawings, and as to their operation says:

"When it becomes necessary or desirable to apply the brakes of a train quickly and with full power for an emergency stop, the engineer's valve, q, will be moved to close communication between the storage tank, y, and train pipe, and open the latter to the atmosphere, and produce a sudden reduction of pressure of about ten or fifteen pounds in the train pipe. The effect of this sudden diminution of pressure in the train pipe is immediately manifested at the nearest valve mechanism, or that on the first car, causing the valve piston, G, to be moved by the higher pressure of auxiliary reservoir air quickly to its full outward position, thus moving the main valve, F, and opening wide the main port, e, so that the air pressure contained in the valve chamber, H, may exhaust freely into the brake cylinder. The supply of air from auxiliary reservoir to the valve chambers, H, is conducted through the restricted or small passage, i. Hence when the main port, e, is opened wide, and the air in valve chamber escapes through the larger passage thus provided, the pressure in said valve chamber is quickly reduced below that in the piston chamber, a, on the auxiliary reservoir side. This follows because the passage, i, supplying auxiliary reservoir air to the valve chamber, H, is so much smaller than the passage, R, supplying the same kind of air to the piston chamber. The sudden and full opening of the main port, e, allows all or nearly all of the air pressure on the brake cylinder side of the check valve, d, to escape, whereupon the check valve will be immediately unseated, and train pipe air will pass directly into the brake cylinder, C', thus effecting the quick application of the brakes, and also a further reduction of pressure in the train pipe that will be sufficient to accelerate the action of the valve mechanisms on the cars following. The piston, G, will in the meantime be held to its outward position by the relatively higher air pressure from the auxiliary reservoir, which is delivered through the large passage, R, while the transmission of auxiliary reservoir air to the brake cylinder is retarded by having to pass through the relatively smaller passage, i. During its preliminary traverse outward or toward the train pipe side the piston, G, operates to close the exhaust passage, and its farther or continued movement in the same direction opens the main valve, F, and allows air to pass from both auxiliary reservoir and the train pipe to the brake cylinder when making a quick application of the brakes. It will be observed that the valve mechanism depends for its action upon the movements of the piston, G, and that the latter is subjected to two opposing forces—auxiliary reservoir air on one side and train pipe air on the

other—and that its movement in one direction is effected by the preponderating pressure of auxiliary reservoir air, while its movement in the opposite direction results from a preponderance of pressure on the train pipe side."

"From the foregoing explanation it is obvious that there is a co-action at the time of applying the brakes for emergency stops between the restricted passage which supplies auxiliary reservoir air, the larger passage which supplies train pipe air, and the single valve which controls the communication of air from both of said passages to the brake cylinder."

"An examination of the particular embodiment of the present invention will disclose the fact that it is a triple valve per se, without auxiliary or supplemental valve devices; and, further, that its conversion into a quick-action valve, and its greater capacity for action over ordinary forms of triple valves, is due to means which I have invented for retarding or restricting the flow of auxiliary reservoir air to the main port or passage leading to the brake cylinder as compared with the more open or free delivery of train pipe air to the said main port or passage. By thus delaying or restraining the flow of auxiliary reservoir air it becomes possible to open both passages to the brake cylinder, and the difference in size of these passages allows a considerable portion of the air from the train pipe at lower pressure to enter the brake cylinder before the air from auxiliary reservoir at higher pressure raises the pressure in the brake cylinder to such a degree as to prevent the ingress of train pipe air; and, further, a single valve—the main valve of the triple valve proper—is here made to perform the office of opening communication to the brake cylinder from both the train pipe and the auxiliary reservoir in the quick application of the brakes for emergency stops. My invention therefore includes any form of structure of valve wherein a single valve admits both train pipe air and auxiliary reservoir air to the brake cylinder in applying for emergency stops, and which structure is provided with means for restricting or retarding the flow of auxiliary reservoir air to the brake cylinder as compared with the flow of the train pipe air thereto."

The claims in question are for:

"(2) In valve mechanism for automatic air brakes, the combination of a communication with the brake cylinder from both the auxiliary reservoir and train pipe, a single valve controlling said communication, and means to retard or restrict the flow thereto of the auxiliary reservoir air when applying the brakes in comparison with the flow of train pipe air, whereby train pipe air, at lower pressure than said auxiliary reservoir air, will pass said valve when making an emergency application of the brakes."

"(4) In a valve for automatic air brakes, the combination of a communication with the brake cylinder, a suitable valve controlling said communication, two air passages co-acting with said valve, and relatively proportioned as to their capacity to allow the flow of both train pipe and auxiliary reservoir air, each at a different pressure to pass said valve when open, and a check valve to prevent the return of air to the train pipe."

"(11) In valve mechanism for automatic air brakes, the combination of a main port communicating with a brake cylinder from both the train pipe and the auxiliary reservoir, a suitable valve controlling said main port, a graduating valve which admits air pressure in small volume to the brake cylinder, and air passages co-acting with said main port, and relatively proportioned as to their capacity to allow both train pipe and auxiliary reservoir air, each at a different pressure, to pass to said main port when the latter is open."

The Westinghouse patent, No. 360,070, dated March 29, 1887, is referred to in the patent, and this invention is distinguished from it. Suit was brought upon this Westinghouse patent against the Boyden Power Brake Company for practicing the inventions of this patent and another for another form of it, and some of the same considerations as to the priority of Westinghouse and others over Boyden were presented there, as here, and were determined in favor of Boyden. Westinghouse v. Boyden Power Brake Co. 170 U. S. 537, 18 Sup.

Ct. 707, 42 L. Ed. 1136.   The restriction upon the auxiliary reservoir air for permitting the flow of train pipe air to the brake cylinder appears to have been claimed for Westinghouse and left to Boyden as a good answer to the charge there of infringement.

It is said in behalf of the defendant that these claims are mere aggregations of old devices, working as before, and producing no new result.   And most of the parts are old, and operate as they had before, but the restriction of the auxiliary reservoir air to make room for the train pipe air at each car for the next throughout the train was new in that order and place, and produced quicker action than anything before, which was a new and very beneficial result.   It was not new to reduce the size of a passage when a smaller one was wanted, but the relatively restricted passage at that place in that co-action was new, and the means for producing it were new in that combination, however old they may have been in other places for other purposes.   The appliance between the train pipe, the auxiliary reservoir, and the brake cylinder, at each car, became a new and different thing, that would do a new thing, in emergencies.   The restricted passage in that made it new; and any working combination of the parts mentioned in the extract quoted from the patent, showing the operation in sudden stops of the train, that includes the restricted passage, with the means of producing it, is a combination of the patent.   It was not necessary to describe or set out in the claims other known parts.   Webster Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177.   In the second claim there are the communication with the brake cylinder from both the auxiliary reservoir and train pipe, a valve controlling the communication, "and means to retard or restrict the flow thereto of the auxiliary reservoir air when applying the brakes," in emergency.   In the fourth claim there are the two air passages "relatively proportioned as to their capacity to allow the flow of both train pipe air and auxiliary reservoir air each at a different pressure."   And in the eleventh claim there are "air passages co-acting with said main port and relatively proportioned" for auxiliary reservoir air and train pipe air at different pressures.   These expressions seem to well cover the restricted passage for reservoir air in these appliances.   Its relative size, and not its form or mode of formation, is what is material, and that, with what belongs to it in use within the apprehension of skilled makers and users, is brought into these claims, which are not claims for the operation of these parts, but for the parts themselves in their respective relations, to be operated when needed.

Upon these views, which are in accordance with those of the learned Circuit Judge expressed on the motion for a preliminary injunction as to the second claim, and reserved as to the fourth and eleventh, these claims appear to be valid.

The stress of the defense seems to rest rather upon showing invalidity of the claims than noninfringement, although infringement is not formally admitted.   The presence of the restricted passage in the defendant's appliances is, however, well shown by the plaintiff's expert, and acknowledged on cross-examination by the defendant's; and it is shown by 42a on the photograph of cross-section of the defendant's valve.   That it operates in substantially the same way as

that of the patent, to make room for train pipe air, is shown by this direction in Christensen's Instruction Book for using defendant's apparatus, at page 16:

"(5) In emergency application, to introduce compressed air from the train pipe to the brake cylinder by an abnormal reduction of train pipe pressure of from 10 to 12 pounds, the passage afforded for compressed air to pass from the train pipe to the brake cylinder to be considerably larger than the passage established between the brake cylinder and the auxiliary reservoir in emergency position."

This shows the restricted passage for auxiliary reservoir air used in the same way as that of the patent, for the same purpose, producing the same result.

Decree for plaintiff on second, fourth, and eleventh claims.